**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

BRYAN ROSS SPEARS,

Petitioner,

vs. Case No.: 3:13-cv-21-J-34JBT
3:11-cr-224-J-34JBT

UNITED STATES OF AMERICA,

Respondent.
_____________________________________/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the undersigned on Petitioner Bryan Ross Spears's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("Motion"). (Doc. 1).[2] Petitioner contends in Ground Four of his Motion that his trial counsel either failed to file a requested notice of appeal, or alternatively, failed to consult Petitioner about his right to appeal as required by Roe v. Flores-Ortega, 528 U.S. 470 (2000). This is the only issue before the undersigned. For the reasons stated herein, it is respectfully **RECOMMENDED** that relief on Ground Four be **GRANTED**, and that the Court (1) vacate Petitioner's judgment on the underlying criminal conviction, (2) reimpose the sentence,

[1] "Within 14 days after being served with a copy of [a report and recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." Id. A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

[2] Citations to Petitioner's criminal case file, United States vs. Bryan Ross Spears, Case No. 3:11-cr-224-J-34JBT, are denoted as "Crim. Doc. ___." Citations to Petitioner's civil § 2255 case file, Case No. 3:13-cv-21-J-34JBT, are denoted as "Doc. ___."

(3) upon reimposing the same sentence, advise Petitioner of the rights associated with an appeal from a criminal sentence, and (4) advise Petitioner that pursuant to Federal Rule of Appellate Procedure 4(b)(1)(A), he has 14 days from the reimposition of sentence to file a notice of appeal. See United States v. Phillips, 225 F.3d 1198, 1201 (11th Cir. 2000).

By Order dated April 23, 2015, the Honorable Marcia Morales Howard granted Petitioner's request for an evidentiary hearing on the Flores-Ortega claim and, under 28 U.S.C. § 636(b) and Rule 8 of the Rules Governing Section 2255 Proceedings, referred Ground Four of the Motion to the undersigned to conduct the hearing, propose factual findings, and recommend a disposition consistent with Flores-Ortega, 528 U.S. 470, and Gomez-Diaz v. United States, 433 F.3d 788 (11th Cir. 2005). (Doc. 17). Consistent with those cases, the undersigned examined:

(1) whether Petitioner expressly instructed counsel to file a notice of appeal, thereby triggering counsel's duty to do so;

(2) if Petitioner neither expressly instructed counsel to file a notice of appeal nor expressly instructed him not to, whether counsel consulted Petitioner about taking an appeal;

(3) if counsel did not consult Petitioner, whether counsel had a duty to consult because either (a) a rational defendant would have wanted to appeal or (b) Petitioner reasonably demonstrated an interest in appealing; and

(4) if counsel's consultation was deficient, whether there is a reasonable probability that Petitioner would have appealed his sentence with adequate consultation.[3]

[3] Although the prejudice inquiry was not among the specific questions contained in the Order referring the Motion to the undersigned for an evidentiary hearing, it does appear that the referral encompasses the issue. The Order referred the entirety of Ground Four for a hearing, and requested that the undersigned submit a report and recommendation consistent with Roe v. Flores-Ortega and Gomez-Diaz v. United States, which both discuss prejudice. Thus, the undersigned will consider the issue.

(See Doc. 17 at 4-5) (citing Flores-Ortega, 528 U.S. at 477-80; Gomez-Diaz, 433 F.3d at 792-93).

## I. Summary of Recommendation

At the hearing, Petitioner conceded that he did not expressly direct counsel to file a notice of appeal.[4] Thus, the issues pared down to whether counsel consulted Petitioner about an appeal, and if not, whether counsel had a duty to consult under the circumstances.

The undersigned recommends that counsel did not adequately consult Petitioner about taking an appeal. Counsel testified that he reviewed the appeal-waiver provision of Petitioner's plea agreement with him before the plea colloquy, and that he advised Petitioner before the sentencing hearing that, due to the guilty plea and appeal-waiver, he would essentially have no appealable issues unless his sentence was illegal. (Doc. 23, Evidentiary Hearing Transcript at 85, 92, 96-97) ("EH Tr."). However, counsel's testimony does not reflect that he advised Petitioner about the advantages and disadvantages of taking an appeal. Moreover, aside from a brief exchange in court, counsel did not discuss with Petitioner taking an appeal after sentence was imposed. (See id. at 128-34). Thus, counsel did not reasonably attempt to discover Petitioner's wishes about appealing the sentence.

The undersigned further recommends that counsel had a duty to consult under the circumstances. This duty was triggered because, while a rational defendant in Petitioner's shoes likely would not have appealed, Petitioner did reasonably demonstrate

[4] For reasons discussed herein, the undersigned also recommends that Petitioner did not expressly instruct counsel not to appeal.

an interest in appealing by requesting that counsel object to the sentence, by expressing surprise and dissatisfaction with the sentence, and by asking counsel if there was something that could be done about the sentence. (See id. at 20, 24, 131).[5]

Finally, the undersigned recommends that counsel's performance prejudiced Petitioner. Petitioner credibly testified that he was upset about his sentence and that he wanted counsel to file a notice of appeal. (See id. at 20, 24). The undersigned thus recommends the finding that there is a reasonable probability that, had counsel adequately consulted with Petitioner about an appeal after the sentencing hearing, Petitioner would have instructed counsel to file a notice of appeal. Accordingly, the undersigned recommends that the Court grant Petitioner relief so that he may pursue an out-of-time appeal.

## II. Legal Principles

There are two requirements that a petitioner must satisfy to prevail on a claim of ineffective assistance of counsel: (1) that "counsel's representation fell below an objective standard of reasonableness," and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). The petitioner bears the burden of proof on both elements. Richardson v. United States, 556 F. App'x 851, 853 (11th Cir. 2014) (citing Johnson v. Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001)).

When a defendant gives his lawyer express instructions to file a notice of appeal, the lawyer's failure to do so is per se professionally unreasonable. Flores-Ortega, 528

5 Petitioner's mother and father expressed similar sentiments. (EH Tr. at 66, 71-72).

U.S. at 477 (citations omitted). Prejudice is presumed and the defendant is entitled to an out-of-time appeal because counsel's inaction has entirely deprived the defendant of a judicial proceeding. Id. Moreover, the existence of an appeal-waiver does not relieve an attorney of the duty to file a notice of appeal if the defendant has expressly requested it, nor does the waiver foreclose a showing of prejudice. Gomez-Diaz, 433 F.3d at 792-93; Hernandez v. United States, 212 F. App'x 832, 833-35 (11th Cir. 2006).

In circumstances in which a defendant neither expressly directs his attorney to appeal nor expressly directs his attorney not to appeal, the first question is whether counsel consulted with the defendant about an appeal. Flores-Ortega, 528 U.S. at 478. The term "consult" specifically means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Id. If counsel performs such a consultation, "the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." Id.

"If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary question: whether counsel's failure to consult with the defendant itself constitutes deficient performance." Id. Thus, an attorney does not have an automatic duty to consult the defendant about an appeal. See id. at 479. Instead, the Supreme Court held that

> counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information

> counsel knew or should have known…. Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

Id. at 480 (internal citation omitted).

If an attorney fails to consult with a defendant about an appeal where the circumstances require it, the defendant "must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Id. at 484. The defendant is not required to show that he had any meritorious appellate issues. Id. at 486.

## III. Analysis

The undersigned conducted an evidentiary hearing on July 27, 2015, at which Petitioner was represented by privately retained counsel. (See generally EH Tr.). Petitioner testified on his own behalf. (See id. at 5-64). The undersigned also heard testimony from Petitioner's mother, Lynn Spears (see id. at 64-69); Petitioner's father, James Spears (see id. at 70-78); and trial counsel, Jeff Quisenberry (see id. at 78-137). This analysis will discuss the testimony as relevant.

**(1) Whether Petitioner specifically instructed counsel to file a notice of appeal**

Petitioner conceded that he did not expressly direct counsel to file a notice of appeal. (Id. at 53-54, 56, 57-58). Petitioner's family members and trial counsel also testified that nobody instructed counsel to file a notice of appeal. (Id. at 68, 77, 101-02). Accordingly, the issues boil down to whether counsel adequately consulted Petitioner about an appeal, and if not, whether counsel had a duty to do so either because (a) a rational defendant would have wanted to appeal or (b) Petitioner reasonably demonstrated an interest in appealing.

**(2) Whether trial counsel consulted Petitioner about taking an appeal**

The undersigned recommends that trial counsel did not adequately consult Petitioner about taking an appeal. Counsel's testimony reflects that he generally discussed the issue of appeals with Petitioner on two occasions before the sentencing hearing, but at no time thereafter. (See id. at 96-97, 128-34). The first occasion prior to sentencing was before the plea colloquy, when counsel reviewed the plea agreement's appeal-waiver provision with Petitioner. (See id. at 85). Counsel told Petitioner that while he might have a right to appeal, "as a practical matter you just don't." (Id.). Counsel opined that it was "very highly unlikely" Petitioner would have any success on appeal. (Id.). The second time counsel advised Petitioner about an appeal was in a meeting shortly before the sentencing hearing, in which counsel explained that appellate success was unlikely because Petitioner had pled guilty and given up his right to appeal, except as a "technical" matter. (See id. at 97). Counsel advised Petitioner "in essence" that

unless his sentence was illegal, there would be "virtually nothing to appeal." (Id. at 92).[6] Counsel testified that Petitioner agreed with that opinion. (Id.).

Counsel admitted that he did not consult with Petitioner about an appeal after the Court pronounced sentence, even though Petitioner was surprised by the sentence and specifically asked him to object to it. (See id. at 128-34). Counsel did not meet with Petitioner after the sentencing hearing to advise him about his right to appeal. (Id. at 131). Counsel did not explain how the federal appellate process works. (Id. at 131-32). Counsel also did not remember writing, calling, or visiting Petitioner at his detention center during the 14-day period following the sentencing hearing to discuss the right to appeal. (Id. at 132-33).

The only exchange that approached a consultation after Petitioner was sentenced happened during a fortuitous interruption during the sentencing hearing.[7] Counsel testified that, while waiting for the Court to reconvene, he had a "very quick" discussion with Petitioner, in which Petitioner "leaned over" and asked him to object to the sentence. (Id. at 100). Counsel recalled that he asked Petitioner if he was talking about an appeal, because "[w]e already discussed that," and Petitioner responded "no. I want you to say I object to the sentence but not the manner." (Id. at 129).[8] This testimony does not reflect that counsel advised Petitioner of the costs and benefits of an appeal in light of his

---

[6] The undersigned notes that, under the waiver, Petitioner retained the right to appeal if the Court varied upward from the guidelines or if the government appealed first (see Crim. Doc. 12, Plea Agreement at 9-10), even though such a sentence would not necessarily have been "illegal."

[7] At the sentencing hearing, the Court sentenced Petitioner to 120 months and the hearing appeared to be over. (See Crim. Doc. 32, Sentencing Tr. at 92-98). However, the Court reconvened the parties about an hour later because it needed to hear if there were any objections to the sentence. (See id. at 98-101).

[8] This brief exchange is discussed more fully in subpart 3(b) herein.

sentence, nor does it reflect a reasonable attempt to ascertain Petitioner's wishes, particularly given the abrupt and hurried circumstances.

Petitioner testified that during the break in the sentencing hearing (after the Court had pronounced sentence but before it had heard objections), he asked counsel "if there was anything we could do," and counsel responded there was not. (Id. at 20; see also id. at 24, 58). Petitioner testified that he asked counsel to object to his sentence, and that counsel agreed to do so. (Id. at 18). However, counsel did not talk to him about the right to appeal, did not review what grounds Petitioner might be able to raise on appeal considering the appeal-waiver, or inform Petitioner that he would have to file a notice of appeal if Petitioner requested him to do so. (Id. at 19-20). When Petitioner went into the custody of the Marshal's Service after the sentencing hearing, counsel did not come back to meet with him, nor did he advise Petitioner about the right to appeal in any follow-up communications. (See id. at 21-23).

In Thompson v. United States, 504 F.3d 1203 (11th Cir. 2007), the Eleventh Circuit addressed the question of what constitutes adequate consultation. In that case, the defendant was unhappy with his sentence and asked counsel about the right to appeal, but counsel responded only by telling the defendant that he had a right to appeal (as the district court had already done), and that he did not think an appeal would be successful or worthwhile. Id. at 1206-07. The court noted: "Counsel did not explain the appellate process or the advantages and disadvantages of taking an appeal, nor that he was obligated to file an appeal if that is what Thompson wanted, regardless of his recommendation." Id. at 1207. The court stated: "Simply asserting the view that an appeal would not be successful does not constitute 'consultation' in any meaningful

sense." Id. The Eleventh Circuit thus held that the consultation was inadequate, and that "[n]o information was provided to Thompson from which he could have intelligently and knowingly either asserted or waived his right to appeal." Id. at 1207 (emphasis in original).

So was the consultation inadequate here. With respect to the period leading up to the sentencing hearing, the testimony reflects only that counsel informed Petitioner that he technically had a right to appeal, but as a practical matter he did not, and that essentially there was nothing to appeal unless his sentence was illegal. With respect to the crucial period following the hearing, counsel did not consult Petitioner about the advantages and disadvantages of appealing, discuss the appellate process, or explain to Petitioner his appellate options. He also made no meaningful effort to ascertain Petitioner's wishes. Accordingly, the undersigned recommends that counsel did not conduct an adequate "consultation," as that term was defined in Flores-Ortega, 528 U.S. at 478, and applied in Thompson, 504 F.3d at 1206-07.

**(3) Whether trial counsel had a duty to consult**

Although the Supreme Court rejected a bright line test that counsel has a duty to consult regarding an appeal in nearly every case, it stated that it "expect[s] that courts evaluating the reasonableness of counsel's performance . . . will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal." Flores-Ortega, 528 U.S. at 481. The undersigned recommends that counsel had a duty to consult under the circumstances because Petitioner reasonably demonstrated an interest in appealing.

**(a) Whether a rational defendant would have wanted to appeal**[9]

A rational defendant likely would not have wanted to appeal the sentence. Petitioner faced a maximum sentence of 20 years, and had a guidelines range of 121 to 151 months.[10] The Court sentenced him to 120 months. (See Sentencing Tr. at 92). There were no obvious, nonfrivolous grounds for an appeal. Petitioner's conviction followed a guilty plea, which by itself "reduces the scope of potentially appealable issues[.]" Flores-Ortega, 528 U.S. at 480. Nothing on the face of the record suggests that Petitioner could have successfully appealed the validity of his guilty plea, and indeed, he never moved to withdraw the plea. In addition, Petitioner had accepted a sentence appeal waiver that "waived some or all appeal rights." Id. (See also Crim. Doc. 12, Plea Agreement at 9-10; Crim. Doc. 31, Plea Tr. at 29-31). Thus, a rational defendant in Petitioner's shoes likely would not have taken an appeal.[11] See Otero v. United States, 499 F.3d 1267, 1270-71 (11th Cir. 2007) (finding that no rational defendant would have taken an appeal where the defendant's sentence was at the low end of his guidelines range, and where the defendant agreed to a sentence appeal waiver nearly identical to Petitioner's).

---

9 Petitioner does not specifically argue this point.

10 The United States charged Petitioner with one count of receiving child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1). (Crim. Doc. 1, Information). Petitioner pled guilty to the same charge. (See Crim. Doc. 12, Plea Agreement at 1).

11 This is not to say that there were no appealable issues whatsoever, as discussed below in subpart (4) concerning the prejudice prong.

**(b) Whether Petitioner reasonably demonstrated an interest in appealing**

The undersigned recommends that Petitioner reasonably indicated to counsel an interest in appealing. Petitioner testified that after the Court sentenced him, he asked counsel "if there was anything we could do," and counsel answered that there was nothing. (EH Tr. at 20; see also id. at 58). Petitioner also testified that he asked counsel to object to the sentence, and counsel did so. (Id. at 20). Petitioner explained that he wanted counsel to object to his sentence because he believed it was unfair. (Id.). Petitioner's mother and father, Lynn Spears and James Spears, also testified that they were shocked and upset by the sentence, and they asked counsel "what do we do next." (Id. at 66; see also id. at 71-72). Likewise, counsel testified that Petitioner was surprised by the length of the sentence (id. at 131), and that his family members were "upset and quiet," and disappointed in the outcome (id. at 101-02).

In Palacios v. United States, 453 F. App'x 887 (11th Cir. 2011) (unpublished)[12], the Eleventh Circuit held that a similar expression of dissatisfaction, coupled with an unspecific inquiry about how to proceed, was enough to trigger counsel's duty to consult. The court confronted a nearly indistinguishable scenario, where the defendant expressed dissatisfaction with his sentence and generically asked counsel "'what's next? What can we do now? Something along those lines.'" Id. at 889. The attorney advised the defendant that "nothing could be done because he had waived his right to appeal his sentence and the district court had sentenced him within the guidelines range." Id. at

[12] Although the undersigned does not rely on unpublished opinions as precedent, they may be cited throughout this Report and Recommendation as persuasive authority on a particular point. Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits a court to cite to unpublished opinions that have been issued on or after January 1, 2007. Fed. R. App. P. 32.1(a).

888. The defendant "was quiet, [and] . . . looked very crushed" in response to the attorney's answer. Id. at 889. The court determined not only that the attorney's advice did not constitute adequate consultation, id. at 888-89, but also that "Palacios's conduct reasonably demonstrated an interest in appealing, [which] triggered [counsel's] duty to consult with him about his appeal." Id. at 889 (citing Thompson, 504 F.3d at 1208).

Likewise, Petitioner (and, to the extent relevant, his family) expressed surprise and dissatisfaction with the sentence. Petitioner asked counsel "if there was anything we could do," and then asked counsel to object to the sentence. In doing so, Petitioner reasonably demonstrated an interest in appealing. The undersigned recommends that Petitioner's conduct was enough to trigger counsel's duty to consult.

At several points in the evidentiary hearing, counsel testified that Petitioner answered "no" during the brief in-court exchange about whether he wanted to appeal. (See EH Tr. at 100, 129-31). Counsel testified that when Petitioner told him in court to object to the sentence, he asked Petitioner whether he was talking about an appeal, and Petitioner said "no. I want you to say I object to the sentence but not the manner." (Id. at 129). However, in describing this exchange again, counsel did not say that Petitioner answered "no" to this question. Rather, counsel recalled as follows: "[The district judge was] asking for objections to the sentence, and [Petitioner] says, well, I want to object to my sentence but not the manner. I said, so do you want to appeal? He said, I want you to say this, say exactly what I said. He said object to the sentence but not the manner." (Id. at 131). In other words, Petitioner did not respond directly to the question. Petitioner himself did not testify to this exchange.

Given counsel's two different versions of this exchange, and the brief, hurried circumstances surrounding it, the undersigned is not confident that this exchange occurred, or at least not in the manner that counsel recalls it. Because Petitioner did not testify to this exchange, and because it would be inconsonant with the rest of the record for Petitioner to have disclaimed a desire to appeal, the undersigned recommends that counsel's second recollection, in which Petitioner did not say "no" to an appeal but instructed counsel how to object to the sentence, is more likely to have occurred. Moreover, the undersigned recommends that Petitioner's silence, or even a "no" response, was ambiguous in these circumstances, and did not reasonably mean that he had disclaimed a desire to appeal. Petitioner might have meant that he was not focusing on an appeal at that time, and that at that time he just wanted counsel to object to the sentence. Petitioner's answer, if indeed he even said "no," is at best ambiguous, and must be considered in light of his surprise and dissatisfaction with the sentence, his request that counsel object, and his inquiry about whether there was anything counsel could do. Considering all of the circumstances, the undersigned recommends that Petitioner reasonably demonstrated an interest in appealing. See Palacios, 453 F. App'x at 889.[13]

**(4) Whether there is a reasonable probability that Petitioner would have appealed**

Had counsel adequately advised Petitioner of his appellate options, the undersigned recommends that there is a reasonable probability Petitioner would have

[13] For these same reasons, the undersigned recommends that Petitioner did not expressly instruct counsel not to appeal.

appealed. Indeed, Petitioner credibly testified that he wanted counsel to file a notice of appeal because he thought his sentence was unfair. (See id. at 20, 24). Petitioner also credibly explained that the reason he did not explicitly communicate a desire to appeal, even though the Court had advised him that he had a right to appeal by filing a notice within 14 days, was because he was confused by seemingly conflicting advice:

> [PETITIONER]: Previously [counsel] said I could not object to anything, that I could not appeal, so as you understand, I would be confused. On one hand they're telling me I can't attack anything. Later on they're saying I can appeal. To me that was very confusing, and my attorney did not say that I could appeal, so I'm going – I'm just trusting my attorney. This is my first time in court. I have no – you know, I'm just putting my full trust in my attorney, and he didn't say that I could appeal, so –

(Id. at 56). As previously discussed, after hearing his sentence, Petitioner asked counsel if there was anything he could do about it and, having been told there was nothing, asked counsel to object to the sentence. This reflects that Petitioner wanted to do something about his sentence.

Moreover, there may be some ground or grounds that Petitioner's appeal waiver would not bar. Petitioner's attorney suggested at the evidentiary hearing that Petitioner could raise a claim of ineffective assistance of counsel which, while usually not addressed on direct appeal, may in theory be raised, see United States v. Hilliard, 752 F.2d 578, 580 (11th Cir. 1985). (EH Tr. at 139-40). Petitioner is under no obligation to point to any meritorious issues that he could raise on appeal, but the presence of appealable issues can add weight to the contention that he would have appealed. Flores-Ortega, 528 U.S. at 485-86. Although it might be likely that any eventual direct appeal will result in the Eleventh Circuit affirming Petitioner's judgment in light of the appeal waiver, Petitioner

pointed out that the right to appeal is one that inures to him, even if the appeal ultimately fails. (See EH Tr. at 138). In light of the foregoing, therefore, and particularly in light of Petitioner's credible testimony that he wanted to appeal, the undersigned recommends that there is a reasonable probability Petitioner would have appealed had counsel consulted him about his right to do so.

## IV. Conclusion

Thus, in response to the Court's request that the undersigned hold an evidentiary hearing and conduct an inquiry consistent with Roe v. Flores-Ortega and Gomez-Diaz v. United States, the undersigned recommends the following: (1) Petitioner did not specifically instruct counsel to file a notice of appeal or not to file a notice of appeal, (2) counsel did not adequately consult Petitioner with respect to an appeal, and (3) counsel had a duty to consult Petitioner about an appeal because, although a rational defendant likely would not have wanted to appeal, Petitioner reasonably demonstrated an interest in doing so. The undersigned further recommends a finding that there is a reasonable probability Petitioner would have appealed had counsel provided a proper consultation. The undersigned therefore **RECOMMENDS** that relief on Ground Four of the Motion be **GRANTED**, and as directed in United States v. Phillips, 225 F.3d 1198, 1201 (11th Cir. 2000), that

1. Petitioner's judgment in the underlying criminal case be vacated;
2. Petitioner's 120-month sentence be reimposed;
3. Upon reimposing sentence, the Court advise Petitioner of the rights associated with an appeal from a criminal sentence; and

4. The Court advise Petitioner that pursuant to Federal Rule of Appellate Procedure 4(b)(1)(A), he has 14 days from the reimposition of sentence to file a notice of appeal.

**DONE AND ENTERED** at Jacksonville, Florida this 5th day of November, 2015.

Joel B. Toomey

JOEL B. TOOMEY
United States Magistrate Judge

lc 19

Copies:

Petitioner Bryan Ross Spears
Counsel of record